UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:18-CV-00767-GNS-CHL

CHRISTINA CROSS,                                                              Plaintiff,

v.

DENTAL ASSISTING ACADEMY OF LOUISVILLE, LLC,                    Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is the motion to quash or, in the alternative, for a protective order of Plaintiff, Christina Cross ("Cross").  (DN 39.)  Defendant, Dental Assisting Academy of Louisville, LLC d/b/a MedQuest College ("MedQuest"), filed a response, and Cross filed a reply. (DNs 42, 45.)  Therefore, this matter is ripe for review.

For the reasons set forth below, Cross's Motion to Quash (DN 39) is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Cross was formerly employed by MedQuest as the Director of Education.  (DN 47, at PageID # 621; DN 39-1, at PageID # 316.)  Cross alleged that she had both diabetes and hypertension prior to her employment with MedQuest.  (DN 47, at PageID # 621.)  Cross asserted that between October 2017 and her June 2018 termination, she experienced various health complications and adverse health events such as "severe fluctuations in blood pressure and blood glucose," "extreme fatigue," vertigo, presyncope, and syncope, which "limited her ability to stand, remain conscious, and walk on a number of occasions, and often resulted in [her] falling unexpectedly."  (*Id.* at 621-22; DN 39-1, at PageID # 316.)  In particular, she cited that on April 1, 2018, she "lost consciousness, fell, and struck her head, causing a laceration that required [her] to seek medical attention at Norton Audobon Hospital."  (DN 47, at PageID # 622.)  In her Third

Amended Complaint, she explained of this incident that "[w]hile hospital staff noted that alcohol consumption was one factor in [Cross]'s injury, laboratory tests also revealed that her blood pressure and potassium were both abnormally low, and [Cross] was instructed to follow up for a blood pressure check upon discharge." (*Id.*; DN 39-6.)

On May 2, 2018, during with a visit with her primary care provider, Cross was advised that her symptoms could be "indicative of coronary artery disease," and that she "was at risk for heart attack or stroke." (DN 47, at PageID # 623.) Cross's provider recommended that she undergo several diagnostic tests and ultimately her provider advised Cross to seek intermittent leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, ("FMLA") to avoid any consequences of missing work for testing purposes. (*Id.*; DN 39-1, at PageID # 316.)

Cross claimed when she sought FMLA paperwork from her supervisor, Robin Boughey ("Boughey"), she was advised that MedQuest did not supply such paperwork; however, Cross ultimately provided MedQuest with a completed FMLA medical certification from her medical provider. (DN 39-1, at PageID # 316-17; DN 39-4.) She alleged that upon receipt of the completed paperwork, Boughey claimed, "We don't do this here. We don't have this here." (DN 39-1, at PageID # 317; DN 47, at PageID # 624-25.) Cross alleged that after she requested leave, she was subject to "increased scrutiny over [her] work," so much so that she decided to initiate a complaint against Boughey and address the increased scrutiny with MedQuest's CEO, Boughey supervisor. (DN 47, at PageID # 625-26; DN 39-1, at PageID # 317.)

On June 6, 2018, Cross claimed she contacted a co-worker to obtain MedQuest's CEO's cell phone number and during that conversation she told her co-worker that she felt Boughey targeted her due to her health issues and request for FMLA leave. (DN 39-1, at PageID # 317; DN 47, at PageID # 626.) The next day, Cross's co-worker reported the phone call to Boughey and

2

stated that during the call, Cross said she "believed Boughey was targeting her because of her health issues," she "felt like she was going to lose her job," and she "mentioned filing FMLA paperwork and potentially filing a lawsuit against MedQuest." (DN 47, at PageID # 626; DN 39-1, at PageID # 318; DN 39-5; DN 42-4.) Cross alleged that Boughey ultimately recommended that Cross be terminated on the basis of the phone call, and Cross was fired on June 12, 2018. (DN 47, at PageID # 626-27; DN 39-1, at PageID # 318.)

Cross brought suit against MedQuest. (DNs 1-1, 9, 15.) Although she previously asserted other disability claims she has since dismissed, her Third Amended Complaint includes only claims for FMLA interference and retaliation. (DN 47.)

**B.     The Instant Motions**

In discovery, MedQuest served a subpoena to take the deposition of Cross's husband, Gerald Cross ("G. Cross"). (DN 39-8.) Cross objected. After the Parties had a telephonic status conference with the undersigned to discuss their dispute as required by the scheduling order (DN 36), Cross filed the instant motion to quash or, in the alternative, for a protective order (DN 39).

Cross argued that the subpoena creates an undue burden on G. Cross because of "the irrelevanc[e] of the information sought, the unique nature of his spousal relationship with [Cross], and the significant danger that the deposition will disclose privileged information." (DN 39-1, at PageID # 321.) As to irrelevance, she argued that the information MedQuest sought related only to her disability discrimination claims, which have been dismissed, and that notwithstanding that fact, G. Cross's "observations of [Cross]'s medical conditions do not tend to make any fact of consequence in this case more or less probable." (*Id.* at 323, 322-24.) As to his spousal relationship with Cross, Cross argued that while the marital testimonial privilege does not impose an absolute bar on G. Cross's testimony in this case, "the underlying policies" of both that privilege

3

and the martial communications privilege, which could apply, militate in favor the Court finding that G. Cross's deposition constitutes an undue burden.  (*Id.* at 324-25.)  She also argued as to the marital communications privilege that any deposition of G. Cross regarding his "knowledge of [Cross]'s disabilities and observations of her disabilities will easily encroach on privileged territory, creating a situation that could be easily abused by [MedQuest] to seek marital communications."  (*Id.* at 326, 325-26.)   Finally, Cross argued that the subpoena was not proportional to the needs of the case because MedQuest has already received a large amount of Cross's medical information including taking the deposition of her primary care provider and subpoenaing numerous medical records.  (*Id.* at 326-28.)  Given this medical evidence, Cross argued that seeking G. Cross's lay witness observations "would be excessive and cumulative." (*Id.* at 327.)

In its response, MedQuest argued that G. Cross does possess relevant, non-privileged information regarding the effects of Cross's illnesses; the facts behind some of the health incidents discussed in Cross's complaint such as the April 1, 2018, fall; and whether G. Cross observed Cross drinking before or during the June 6, 2018, call with her coworker that ultimately resulted in her termination.  (DN 42, at PageID # 520-23.)  MedQuest explained that Cross, "may be able to shed some light on [the July 6, 2018, call] and other instances when intoxication may have affected [ ] Cross's interactions with coworkers."  (*Id.* at 522.)  MedQuest argued that these facts are relevant to both Cross's claims and its affirmative defenses.  (*Id.* at 523.)  As to Cross's privilege concerns, it agreed with Cross that the marital testimonial privilege does not apply in this action and argued that there could be no determination regarding the applicability of the marital communications privilege until the Court and the Parties have specific deposition questions to consider.  (*Id.* at 523-25.)  It summarized that because Cross "has relied upon a variety of events

and conditions that were either observed by her husband [G. Cross] or in which he directly participated," MedQuest should not be limited to relying on Cross's own assertions on these points and should be entitled to question G. Cross. (*Id.* at 525.)

In her reply, Cross emphasized that though MedQuest claimed the information it sought was relevant to its affirmative defenses, it did not specify which affirmative defenses it referenced. (DN 45, at PageID # 597.) She again argued that the information sought by MedQuest is not relevant to her FMLA claims and that allowing MedQuest to inquire "into sensitive health matters through [her] [ ] husband only serves to annoy, harass, and embarrass both [Cross] and [G. Cross]." (*Id.* at 598.) She also argued that any information related to alcohol use and/or treatment is irrelevant and unrelated to the claims in this case. (*Id.* at 598-99.) On the issue of undue burden, she argued that if forced to sit for a deposition, G. Cross will miss work and will not receive paid leave. (*Id.* at 603.)

These matters are ripe for the Court's review.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 26(b) governs the scope of discovery. Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2

(W.D. Ky. Aug. 19, 2013) (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). When an objection to relevance is raised or the relevance of the information sought is not apparent, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action. *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008). Otherwise, a party resisting discovery bears "the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). *See also Lillard v. Univ. of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *6 (W.D. Ky. Apr. 7, 2014). However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

Fed. R. Civ. P. 45 allows parties, *inter alia*, to command a nonparty to appear at a certain time and place to testify or produce documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). Although irrelevance or overbreadth are not specifically listed under Rule 45 as a basis for quashing a subpoena, courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). The Court must quash any subpoena that imposes an undue burden or expense on the person subject to the subpoena, does not allow reasonable time to comply, requires compliance beyond the geographic limits of Rule 45, or requires disclosure of "privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(1), (d)(3)(A). The Court may quash or modify any subpoena that requires disclosure of a "trade secret or other confidential

research, development, or commercial information" or certain information or opinions from an unretained expert.  Fed. R. Civ. P. 45(d)(3)(B).  However, under such circumstances, in lieu of quashing or modifying the subpoena, the Court may order production under specified conditions upon a showing by the party who served the subpoena of substantial need and that "the subpoenaed person will be reasonably compensated."  Fed. R. Civ. P. 45(d)(3)(C).  Other than the showing required by Fed. R. Civ. P. 45(d)(3)(C), the "party seeking to quash a subpoena bears the ultimate burden of proof."  *Hendricks*, 275 F.R.D. at 253.

Rule 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including to order that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters.  Fed. R. Civ. P. 26(c).  Good cause requires the moving party to "articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought."  *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).  The party seeking the protective order bears the burden of showing that good cause exists for the order.  *Id.*

### III.    ANALYSIS

#### A.    Scope of Discovery

The Court will first analyze whether the information MedQuest seeks from G. Cross is within the scope of discovery under Rule 26.  As set forth above, all relevant, nonprivileged information is discoverable subject to proportionality considerations.  Fed. R. Civ. P. 26(b)(1).

As to relevance, the Parties dispute whether G. Cross possesses relevant information.  An examination of the elements of the claims in Cross's Third Amendment Complaint is instructive on this issue.  To prove a *prima facie* case of interference under the FMLA, Cross must prove that

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) [ ] [she] was entitled to leave under the FMLA; (4) [ ] [she] gave the employer notice of her intention to take leave; and (5) the employer denied [ ] [her] FMLA benefits to which she was entitled.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir. 2005)).  To prove a *prima facie* case of retaliation under the FMLA, Cross must prove that

> (1) she was engaged in an activity protected by the FMLA; (2) [her] employer knew that she was exercising her rights under the FMLA; (3) after learning of [ ] [her] exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.* (citing *Arban v. W. Publ'g Corp.,* 345 F.3d 390, 404 (6th Cir. 2003)).  While MedQuest did not specify to which affirmative defenses it claimed G. Cross's testimony would be relevant in its response, its answer to Cross's Third Amended Complaint includes a defense that Cross cannot establish a *prima facie* case of either FMLA interference or retaliation.  (DN 48, at PageID # 637.) One of the elements of her FMLA interference claims is that Cross was actually entitled to the leave she sought; thus, her medical conditions are relevant in this action.  It is likely that G. Cross would have information regarding the same, especially given the information provided by MedQuest in its response concerning G. Cross being present for some of the relevant events detailed in Cross's Third Amendment Complaint.  Accordingly, he possesses relevant information to Cross's claims that is discoverable unless otherwise barred the rules.

However, in order for otherwise relevant information to be within the scope of discovery, it must be non-privileged.  The only potentially applicable privilege to any information in the possession of G. Cross is the marital communications privilege as the other privilege mentioned in Cross's motion, the martial testimonial privilege, applies only to criminal and grand jury proceedings.  *United States v. George*, 444 F.2d 310, 313 (6th Cir. 1971).  "The confidential

marital communications privilege excludes confidential communications made by one spouse to the other during the marriage. This privilege is assertable by either spouse." *United States v. Porter*, 986 F.2d 1014, 1018-19 (6th Cir. 1993). The prerequisites to asserting the privilege are: "(1) [a]t the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to 'utterances or expressions intended by one spouse to convey a message to the other'; and (3) the communication must be made in confidence." *Id.* (quoting *United States v. Lustig*, 555 F.2d 737, 748 (9th Cir. 1977)) (citations omitted). Confidential communications between spouses made during marriage are presumptively privileged. *United States v. Robinson*, 763 F.2d 778, 783 (6th Cir. 1985). But this presumption may be overcome by proof of facts showing that the communications were not intended to be private. *Pereira v. United States*, 347 U.S. 1, 5 (1954). "The presence of a third party negatives the presumption of privacy. So too, the intention that the information conveyed be transmitted to a third person." *Id.* (citation omitted); *Wolfle v. U.S.*, 291 U.S. 7, 14 (1934) (finding husband's letter to wife not "confidential" because it had been dictated to stenographer). For example, where one spouse has already testified at deposition as to conversations with the other spouse, the martial communications privilege will no longer protect those conversations from disclosure. *Bila v. RadioShack Corp.*, No. 03-10177-BC, 2004 WL 2713270, at *16 (E.D. Mich. Nov. 22, 2004). Cross's motion contains no showing sufficient to convince the Court that all relevant information within the possession of G. Cross would fall squarely within the martial communications privilege. For example, if asked about his own observations of Cross's behavior, conditions, or the factual events underpinning this case, it is not clear his testimony would always or even ever rely on spousal communications. However, the Court cannot make such a determination in a vacuum, and Cross has provided no authority to support that the potential assertion of the privilege as to some deposition questions bars the

deposition from occurring at all.  Likewise, the Court is not persuaded by Cross's attempts to point to the policies underlying both the martial communications and marital testimonial privileges as an independent reason for the Court to grant her requested relief.  The policies she highlights are the reasons that courts developed the privileges at issue, and Cross did not provide any authority to support that it is proper for the Court to grant greater protection than that already afforded by the established privileges.  Accordingly, privilege, at this stage, does not bar the discoverability of all information from G. Cross.

Information that is otherwise relevant and nonprivileged is still not within the scope of discovery if discovery of the same is not "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Additionally, Fed. R. Civ. P. 26(b)(2) requires a court to curtail "unreasonably cumulative or duplicative discovery."  Fed. R. Civ. P. 26(b)(2)(C)(i).  Here, the Court finds Cross's argument regarding the cumulative and duplicative nature of the information sought in light of the medical information already received in discovery potentially persuasive.  If MedQuest has already received information from Cross's medical providers regarding her medical conditions, G. Cross's lay witness observations regarding the same are to some extent duplicative and cumulative on that point regardless of the relevance of the same.  But the inquiry is not just if the testimony is cumulative and duplicative, the inquiry is whether the testimony is *unreasonably* cumulative and duplicative.  Fed. R. Civ. P. 26(b)(2)(C)(i).  MedQuest's argued that the testimony sought from G. Cross is broader that characterized by Cross.  While it claimed it was not required to provide Cross with "a road map" to G. Cross's deposition, it identified several areas on which it claimed G. Cross could provide relevant testimony.  (DN 42, at PageID # 523.)  It argued in its response that because Cross asserts that her medical conditions and their effects on her were known to MedQuest employees, "[h]ow they affected [ ] [Cross] at home and how they were perceived by

her husband could be a useful comparison." (*Id.* at 520.)  MedQuest claimed Cross has already testified regarding "multiple [health] events occurring at [her] home" about which G. Cross "would have substantial knowledge." (*Id.* at 521.)  MedQuest emphasized that that Cross could not remember certain facts about her April 1, 2018, fall and the events that preceded it during her deposition and that G. Cross would be able to supplement this testimony. (*Id.*)  MedQuest noted that G. Cross accompanied Cross to a May 2, 2018, medical appointment with Cross's provider and "provided relevant information to [Cross's] [provider] [ ] directly related to treatment that Cross focuse[d] on in her complaint," and that Cross could not remember anything outside the May 2, 2018 medical record on these points at her deposition. (*Id.* at 522.)  It noted that "Gerald Cross was involved in or present for many of the events leading to Cross's scores of absences during her employment," and that Cross's absenteeism is potentially related to the "hostility" she claims was directed toward her. (*Id.*)  It also argued that G. Cross "may be able to shed some light on that and other instances when intoxication may have affected [ ] Cross's interactions with coworkers." (*Id.*)  It implied, without directly stating, that it believes Cross's health issues were related to or exacerbated by some degree of alcohol abuse that it believes is relevant to whether she can make out a *prima facie* case of either FMLA interference or retaliation.  While Cross disputes the extent to which some of these topics are relevant, her arguments largely tend toward whether the evidence provides a meritorious defense to MedQuest, an issue not presently before the Court for its consideration.  Given that the examples of the type of testimony G. Cross could provide are slightly broader than those that would be covered by Cross's medical records, the Court finds that the testimony sought from G. Cross is not unreasonably cumulative or duplicative or otherwise barred by Fed. R. Civ. P. 26(b)(2)(C).  Likewise, testimony from G. Cross is proportional to the needs of the case as it does not appear that the burden or expense of his

deposition outweighs its likely benefit.  The only burden identified by Cross in support of such an argument apart from the privilege concerns discounted above is that G. Cross will have to take off work to attend a deposition.  (DN 45, at PageID # 603.)  While that is a burden to some extent, Cross has not demonstrate it constitutes an *undue* burden in this case.

Accordingly, the Court finds that G. Cross's testimony is within the scope of discovery under Rule 26.

### B.     Fed. R. Civ. P. 45

Cross's motion to quash, despite alleging that the deposition is an undue burden on G. Cross, is filed only on behalf of Cross and not on behalf of G. Cross.  (DN 39.)  Accordingly, while unaddressed by the Parties, the Court must first address whether Cross has standing to file a motion to quash a subpoena directed to G. Cross.  While Fed. R. Civ. P. 45 does not explain who has standing to challenge a subpoena issued to a nonparty, district courts within the Sixth Circuit routinely hold that parties to a lawsuit lack standing to challenge a subpoena served on a nonparty except on grounds of privilege.[1]  *See, .e.g.*, *Donahoo v. Ohio Department of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002).  Cross claimed that the marital communications privilege justified quashing the subpoena.  (DN 39-1, at PageID # 325-26.)  However, as set forth above, Cross's motion contains no showing sufficient to convince the Court that all relevant information within the possession of G. Cross would fall squarely within the martial communications privilege. Accordingly, Cross has failed to demonstrate that the subpoena issued to G. Cross "requires

---

[1] The Sixth Circuit has indicated in dicta that it would apply the same standard if faced with the issue. *See Mann v. Univ. of Cincinnati*, Nos. 95–3195 & 95–3292, 1997 WL 280188, at *4 (6th Cir. May 27, 1997) ("We need not decide today exactly how Rule 45 applies in every hypothetical case, because in this case it cannot be disputed that the University and defendants' attorney knew that plaintiff wished to assert a privilege over her medical records, and therefore should have known that she had standing to challenge the subpoena, regardless of her ultimate success."); *see id.* (citing 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995) (noting that "[o]rdinarily a person has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought")).

disclosure of privileged or other protected matter" to which "no exception over waiver applies" pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii).  As this is the only argument that Cross has standing to raise with respect to the subpoena, the Court does not reach her claims that the subpoena imposes an undue burden on G. Cross.  Therefore, her motion to quash is **DENIED**.

      **C.**      **Fed. R. Civ. P. 26(c)**

      As to Cross's requested protective order, Cross has not articulated any specific facts that support a "clearly defined and serious injury," *Nix*, 11 F. App'x at 500, or that G. Cross's deposition will subject either her or G. Cross to "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  While she argued in her reply that "inquiry into sensitive health matters through [her] [ ] husband only serves to annoy, harass, and embarrass" them both, she fails to substantiate this argument.  (DN 45, at PageID # 598.)  Cross put her health conditions at issue given the subject matter of her lawsuit, and she has not demonstrated that MedQuest is abusing the scope of its inquiry into the same.  She also claimed that MedQuest's "desire to probe into  [ ] [her] alcohol usage is more related to a desire to conduct a character assassination . . . based on outdated and offensive stereotypes of people with substance abuse issues more than a relevant inquiry into any fact of consequence in this case."  (DN 45, at PageID # 599.)  Here, again, Cross does not support this claim.  While the concerns she raises are of larger import at trial, at the discovery stage, her concerns are nondispositive as information need not be admissible to be discoverable.  In light of the arguments raised in her motion and reply, the Court finds that Cross has failed to demonstrate grounds sufficient to issue a protective order with the required degree of specificity.  Therefore, her motion for protective order is **DENIED**.

### D.     Conclusion

As the information MedQuest seeks from G. Cross is relevant and within the scope of discovery and Cross has not demonstrated she is entitled to relief pursuant to either Fed. R. Civ. P. 45 or 26(c), her motion will be denied.  MedQuest may proceed to take the deposition of G. Cross as set forth below.  However, the Court refers the Parties to its analysis regarding the elements of the marital communications privilege above.  The Parties are encouraged to confer in advance of G. Cross's deposition regarding an appropriate protocol for handling privilege issues during the deposition and to avoid, where possible, needless disputes regarding privilege.

## IV.    ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Cross's motion to quash or, in the alternative, for protective order (DN 39) is **DENIED**.  The Parties are directed to the Court's April 6, 2021, Order (DN 43), for the deadlines that will now govern the completion of discovery and filing of dispositive motions.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record

March 2, 2022